PORTLAND AND OGDENSBURG RAILROAD COMPANY *vs.* THE INHABITANTS OF STANDISH.

Cumberland, 1874.—December 31, 1875.

*Town. Railroad. Vote to aid railroad—what essential to validity of.*

In order to authorize a subscription by a town to the stock of a railroad company, to aid in the construction of the road under Public Laws of 1867, c. 119, not only the vote to raise the necessary funds and to use them in aid of the road, but also, that directing the particular method of affording assistance (whether by loan, or by subscribing for stock, or in some other manner,) must appear to have been carried by the assent of two-thirds of the voters present, and voting at the town meeting at which the subject was acted upon.

Where the town clerk's record of the doings at such town meeting, after mentioning the state of the vote upon the proposition to aid in the construction of a railroad to the amount indicated, declares that it was voted that such sum be hired and appropriated to pay for a specified number of shares,

without saying by what majority this vote was carried, no implication of law arises, that the proportion of legal voters present, and voting upon this proposition necessary for its adoption by the meeting, were in its favor.

The maxim *"omnia præsumuntur rite . . acta,"* &c., cannot be held so applicable to such a state of facts as to authorize an inference that two-thirds of the voters at the meeting were in favor of the subscription; but it is rather to be supposed that it was not thought necessary to ascertain anything more than that it received the assent of a majority of those acting upon the subject.

## On report.

Assumpsit to recover twenty thousand dollars alleged to be subscribed by the defendant town for two hundred shares of the capital stock of the plaintiff company, and to aid in the construction of their railroad, under Public Laws of 1867, c. 119. The first count was upon an account annexed for the various assessments upon these shares, averaging due May 21, 1870, with interest thereafterwards to the date of the writ, January 15, 1872. The second count declared upon an agreement to subscribe for these shares; the third stated the same fact with the making and demand of the assessments; while the fourth recited the holding of a town meeting by the defendants, upon the fourteenth day of January, 1869, at which it was voted by more than a two-thirds majority of those present to raise by loan twenty thousand dollars to aid in the construction of the plaintiffs' railroad, and was then voted that the town hire that sum for twenty years, and appropriate it to the purchase of two hundred shares of the stock of the road, to aid in its construction, and declared that the defendants, when called upon, after the road had been built through their town as required by said vote, refused to subscribe or pay for the same. A fifth count for money had and received, was added with a specification of the facts stated in the preceding count. There was no question raised but that this meeting of the fourteenth of January, 1869, was regularly called and held under a warrant stating the object to be, to see if the town would aid in the construction of the plaintiffs' railroad by subscribing for shares of its stock. The record of the doings of that meeting, stated that it was voted to raise twenty thousand dollars by loan to aid in the construction of the Portland and Ogdensburg Railroad, provided said road shall be located and built through the town of Standish, between

Sebago pond and Saco river; which question was said to have been "decided by ballot, as follows, to wit: whole number of ballots cast was one hundred and eighty-one by yes and no; in favor of the motion, one hundred and twenty-one—yes, (121;) noes—sixty, (60.)"

The record then proceeded: "Article 3d, voted, that the town will hire the sum of twenty thousand dollars for a term of not less than twenty years, but payable at the pleasure of the town after five years; and that said sum be, and the same is hereby appropriated to the payment for the same two hundred shares of the capital stock of the Portland and Ogdensburg Railroad, to be subscribed for by the town in aid of the construction of that railroad."

This is all the record contained, and no other testimony as to the state of the vote upon the foregoing article was offered. The road was located and built through Standish between Saco river and Sebago pond, but the town never subscribed for any of the stock. Before locating their road, the directors were unofficially informed by some of the inhabitants, of these votes, and requested the selectmen to make the subscription, which they declined to do, though it was less than five per cent. of the town's valuation. Still the directors proceeded to assess the town for these two hundred shares, and brought this suit upon the defendants' failure to pay for them. Upon these facts, substantially, the cause was submitted upon report.

*N. Webb,* for the plaintiffs.

The record shows a clear two thirds majority upon the proposition to render aid; this was the essential point, which required the assent of that proportion of the voters; the particular manner of affording the assistance was non-essential, and could be determined by a majority. But the fair implication from the record is, that it received the necessary support, whatever that may be; otherwise it could not have been declared and recorded as a vote. When the record states that a certain thing was voted to be done, but is silent as to the method of ascertaining the vote, it must be presumed that it was correctly determined, agreeably to the maxim applicable to the doings of all public officers, *"omnia præsumun-*

*tur rite . . acta,*" &c. *Lexington* v. *Headley,* 5 Bush., (Ky.,) 508. *Covington* v. *Boyle,* 6 Bush., 204.

*H. J. Swasey & Son* and *J. & E. M. Rand,* for the defendants.

Public Laws of 1867, c. 119, § 1, authorizes towns to raise money and to appropriate the same, in such manner as they deem proper, to aid in the construction of a railroad, by a two-thirds vote. The manner in which aid shall be rendered is thus required to be determined by the same preponderance of votes, as settles whether or not aid shall be given at all. *Andrews* v. *Boylston,* 110 Mass., 214.

BARROWS, J.   It will not suffice for the maintenance of this action that honor and fair dealing would seem to call upon the inhabitants of Standish to fulfil the expectations which the votes of the town apparently induced the plaintiffs to indulge.   Unless the case shows that those expectations and the consequent action of the railroad company in building their road through the town were based upon some valid corporate act of the town, creating such a contract between the town and the railroad company as is set forth in the writ, the plaintiffs cannot recover.

There is one defect in the plaintiffs' proof (if no more) which we regard as fatal.

The power of the town to bind itself in any manner in the premises, is found in the Public Laws of 1867, c. 119, which authorizes a town at any legal meeting duly notified and holden for that purpose, to raise money to an amount not exceeding a certain per cent. of the valuation of the town, "and to appropriate the same to aid in the construction of any railroad in this state, in such manner as they shall deem proper, provided that two-thirds of the legal voters present and voting at such meeting, shall vote therefor."

To exercise this power effectively, so as to bind the town, it must be shown that not only the raising of the money, but its appropriation to aid in the construction of the railroad and the manner of its appropriation were all settled by the requisite two-thirds vote.

Two-thirds of the voters at the meeting might be in favor of raising the money to aid in the construction of the railroad, but unless two-thirds of those present and voting could agree as to the manner in which it should be appropriated to that end, the action of the town in the execution of the power given by the statute would be defective and invalid.

For example, if a portion of those constituting the two-thirds majority in favor of raising the money were in favor of loaning it to the railroad company on a mortgage of the stock and franchise of the road, and a portion were disposed to apply it in payments upon stock to be subscribed for, and the requisite two-thirds vote could not be obtained to appropriate it in either manner, the vote of a majority merely would not constitute a valid appropriation of it for either purpose.

We cannot assent to the plaintiffs' proposition that the manner of the appropriation in aid of the road is a mere non-essential incident to the principal question. It is a matter of vital moment, placed by the express terms of the statute within the proviso which requires a two-thirds vote.

The foundation of the plaintiffs' case must fail unless there is proof of a two-thirds vote appropriating the money to the payment for stock to be taken by the town.

The record of the town meeting held January 14, 1869, exhibits a vote to raise by loan the sum of twenty thousand dollars to aid in the construction of the Portland and Ogdensburg Railroad provided said road shall be located and built through the town of Standish between Sebago pond and Saco river, with the following statement appended: "The question was decided by ballot as follows, to wit: whole number of ballots cast was one hundred and eighty-one (181) by yes and no; in favor of the motion, one hundred and twenty-one—yes, (121); noes, sixty (60)."

The requisite majority seems to have been obtained on the vote to raise the money. But it still remained to be determined in what manner the town would deem it proper that the money should be appropriated: and all that appears in relation to that matter is that the town voted to "hire the sum of $20,000 for a term of not less than twenty years but payable at the pleasure of

the town after five years, and that the said sum be and the same hereby is appropriated to the payment for the same two hundred shares of the capital stock of the Portland and Ogdensburg Railroad, to be subscribed for by the town in aid of the construction of that railroad."

The plaintiffs' counsel claims that the word "voted" in the record "implies that the proportion of the legal voters present and voting upon the proposition necessary for its adoption by the meeting were in favor."

As a general thing votes are passed by majorities. The exceptions requiring any greater proportion of the whole number are so infrequent that a town clerk would hardly consider his record complete if it did not exhibit all votes thus passed. If it was understood that any particular proportion of the whole number voting was required in order to make the vote valid and binding, we should expect to find the state of the vote recorded. In the case before us it appears that as a part of the record of the vote to raise the money, the details are scrupulously given in words and figures. We think the true inference from the omission to make any such statement respecting the vote now under consideration is, that it was not supposed to be necessary to have a clear two-thirds vote for the proposition, and therefore no steps were taken to ascertain how the vote stood except that a majority voted for it. It is insisted by the plaintiffs' counsel that the maxim "*omnia præsumuntur rite*," &c., is applicable, and hence the proper presumption from the record of the vote as it stands is that the required majority was obtained for it.

Where, as here, it is incumbent upon the plaintiff to establish the existence of a contract with a municipal corporation, and such contract can be legal and binding only when agreed to by something more than a mere majority vote, we think its establishment should not be left to depend upon a presumption so loose and unsatisfactory. A fact so important should be verified on the spot; and when thus verified, the means of proving it are not far to seek. Assuredly we have no inclination to relieve towns from any legal obligations which they may voluntarily assume for the purpose of securing to their inhabitants the advantages of railroad

transportation for themselves and their commodities. But while plenary proof of a contract to that end is so readily attainable whenever one is in fact made, it is but just that the railroad company which claims the benefit of it should establish its existence without resorting to the vague and unreliable presumption upon which the case is rested here. In the absence of all proof except the record before us, we think the plaintiffs have failed to make it appear that two-thirds of the legal voters present and voting at the meeting, voted for any proposition which could be regarded, even if accepted and acted on by the railroad company, as creating such a contract as the plaintiffs have alleged.

It is needless, perhaps to add that without proof of this fact, no liability whatever on the part of the town is shown to exist.

Thus, even if it could be successfully argued that the votes of the town, had they passed by the requisite majority, would have amounted to a proposition which when accepted by the railroad company would constitute a contract to take and pay for two hundred shares of the capital stock of the company, without a formal subscription by the agents of the town, and that the assent of the railroad company thereto is sufficiently shown by the building of the road in conformity with the condition in the vote, and by the request to the selectmen to subscribe, and the subsequent assessments upon the shares as if subscribed for and taken by the town, still, the foundation of the plaintiffs' claim would be fatally defective.

It is not necessary for us here and now to determine whether or not an actual formal subscription for the stock was indispensable.

*Plaintiffs nonsuit.*

APPLETON, C. J., WALTON, DICKERSON, VIRGIN and PETERS, JJ., concurred.